**No. 14-35555**

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

ANNA J. SMITH,

*Plaintiff-Appellant,*

*v.*

BARACK OBAMA, ET AL.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the District of Idaho, Boise; Case No. 2:13-cv-00257-BLW
The Honorable B. Lynn Winmill, Chief District Judge

## BRIEF OF THE NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS AS AMICUS CURIAE IN SUPPORT OF APPELLANT

Catherine R. Gellis
P.O. Box 2477
Sausalito, California 94966
Telephone: 202-642-2849
cathy@cgcounsel.com

Michael H. Page
Joseph C. Gratz
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
mpage@durietangri.com
jgratz@durietangri.com

*Attorneys for Amicus Curiae*
*National Association of Criminal Defense Lawyers*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for amicus curiae certifies the following information:

National Association of Criminal Defense Lawyers does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**PAGE NO.**

IDENTITY AND INTEREST OF AMICUS CURIAE............................1

INTRODUCTION AND SUMMARY OF ARGUMENT.........................2

ARGUMENT ........................................................................................4

    I.    The Government's Wholesale, Indiscriminate Collection Of All Call Records Violates The Sixth Amendment Right To Counsel ..........................................4

        A.    The Sixth Amendment right to counsel depends on the privacy of communications between attorneys and clients.................................. 4

        B.    Because the bulk collection of telephone metatdata destroys the privacy of these lawyer-client communications, it violates the Sixth Amendment................................................ 9

    II.    Because the Bulk Collection of Metadata Violates a Legitimate Expectation of Privacy in Lawyer-Client Communications, It Violates the Fourth Amendment ..........................................................12

        A.    The government's bulk collection of phone metadata constitutes a "search" under the Fourth Amendment because it invades a legitimate expectation of privacy society recognizes as reasonable........................................ 12

        B.    This expectation of privacy can survive exposure to third parties. ...................................... 13

        C.    The expectation of privacy applies to identifying information.......................................... 14

CONCLUSION ........................................................................16

CERTIFICATE OF COMPLIANCE....................................................18

CERTIFICATE OF SERVICE............................................................19

# TABLE OF AUTHORITIES

PAGE NO(S).

## Cases

*Baird v. Koerner,*
  279 F.2d 623 (9th Cir. 1960) ....................................................... 14, 15

*Clapper v. Amnesty International USA,*
  No. 11-025 (U.S. Oct. 29, 2012) ............................................................ 11

*Clutchette v. Rushen,*
  770 F.2d 1469 (9th Cir. 1985) ............................................................ 10

*Fisher v. United States,*
  425 U.S. 391 (1976) ............................................................ 12

*Gonzalez v. United States,*
  553 U.S. 242 (2008) ............................................................ 7

*Hickman v. Taylor,*
  329 U.S. 495 (1947) ............................................................ 5

*Hunt v. Blackburn,*
  128 U.S. 464 (1888) ............................................................ 5

*Kyllo v. United States,*
  533 U.S. 27 (2001) ............................................................ 12

*McMann v. Richardson,*
  397 U.S. 759 (1970) ............................................................ 4

*Padilla v. Kentucky,*
  130 S. Ct. 1473 (2010) ............................................................ 7

*Roe v. Flores-Ortega,*
  528 U.S. 470 (2000) ............................................................ 7

*Rompilla v. Beard,*
  545 U.S. 374 (2005) ................................................................7

*Smith v. Maryland,*
  442 U.S. 735 (1979) .......................................... 13, 14, 15, 16

*Smith v. McCormick,*
  914 F.2d 1153 (9th Cir. 1990) ............................................14

*Swidler & Berlin v. United States,*
  524 U.S. 399 (1998) ...........................................................5, 8

*Trammel v. United States,*
  445 U.S. 40 (1980) ................................................................6

*United States v. Irwin,*
  612 F.2d 1182 (9th Cir. 1980) ..............................................9

*United States v. Jones,*
  132 S. Ct. 945 (2012) ............................................................3

*United States v. Kovel,*
  296 F.2d 918 (2d Cir. 1961)................................................14

*United States v. Richey,*
  632 F.3d 559 (9th Cir. 2011) ..............................................14

*Upjohn Co. v. United States,*
  449 U.S. 383 (1981) ..............................................................5

*X Corp. v. Doe,*
  805 F. Supp. 1298, 1307-10 (E.D. Va. 1992),
  *aff'd mem.,* 17 F.3d 1435 (4th Cir. 1994) ...........................6

## Other Authorities

8 Wigmore, *Evidence* § 2301 (McNaughton Rev. 1961)..........................14

American Bar Association, *Standards for Criminal Justice,*
  Defense Function, § 4-3.1(a) (3d. ed. 1993).......................................7, 8

John Shiffman & Kristina Cooke, *Exclusive: U.S. directs agents to cover up program used to investigate Americans*, Reuters (Aug. 5, 2013) ................................................................. 11

Press Release, Ron Wyden, Udall, Wyden, Heinrich Urge Solicitor General to Set Record Straight on Misrepresentations to U.S. Supreme Court in Clapper v. Amnesty (Nov. 21, 2013) ..................... 11

Restatement (Third) of Law Governing Lawyers § 119(2) (2000) .......... 10

Rodney J. Uphoff, *The Physical Evidence Dilemma: Does ABA Standard 4-4.6 Offer Appropriate Guidance?*, 62 Hastings L.J. 1177 (2011) ........................................................ 10

Ryan Gallagher, *The Surveillance Engine: How the NSA Built its Own Secret Google*, The Intercept (Aug. 25, 2014) ............................ 11

## Rules

Fed. R. App. P. 29(a) .................................................................. 1

Model Rules of Prof'l Conduct R. 1.6 (2011) ........................... 6, 7

Model Rules of Prof'l Conduct R. 1.6(a) (1983) ......................... 6

## Constitutional Provisions

U.S. Const. amend. VI ............................................................... 4

Pursuant to Federal Rule of Appellate Procedure 29(a), all parties have consented to the filing of this brief by amicus curiae.

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Amicus National Association of Criminal Defense Lawyers ("NACDL") was founded in 1958 as a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crime or misconduct. Direct national membership stands at over 10,000 attorneys, in addition to more than 40,000 affiliate members from all 50 states. NACDL's members include private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. It is also the only nationwide professional bar association for public defenders and private criminal defense lawyers, and the American Bar Association recognizes NACDL as an affiliated organization and awards it full representation in its House of Delegates. As part of its mission, NACDL files numerous amicus briefs each year in the United States Supreme Court and other courts, seeking to provide amicus assistance

---

[1] Amicus NACDL hereby certifies that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person other than Amicus contributed money intended to fund preparing or submitting the brief.

in cases that present issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system as a whole.

Many of NACDL's members are, or represent, people like Plaintiff Smith: customers of Verizon Wireless who have had their call records turned over to the government without their knowledge or consent.

NACDL therefore submits this amicus brief to support Plaintiff Smith's appeal because the wholesale collection of all telephone metadata by the government necessarily captures communications made between lawyers and those seeking their assistance. By doing so the government destroys the confidentiality of these communications and accordingly violates the Sixth Amendment right to counsel, which depends on this confidentiality. Furthermore, because this destruction of confidentiality in attorney-client communications invades a legitimate expectation of privacy society has long deemed reasonable and necessary for the right to counsel to be meaningful, the government's warrantless collection of these records also represents a violation of the Fourth Amendment, as Plaintiff Smith has argued.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is about the wholesale, warrantless collection of call record information by the government of all or nearly all Americans without their knowledge, consent, or even any individualized suspicion. Appellant's Opening Br. at 1. These records include detailed information about the character of each call ("metadata"), including

2

their time and duration and the phone numbers identifying the parties connected by the calls. *Id.* at 5.

This metadata, when aggregated, "generates a precise, comprehensive record" of people's habits, which in turn "reflects a wealth of detail about [their] familial, political, professional, religious, and sexual associations." *United States v. Jones*, 132 S. Ct. 945, 955 (2012) (Sotomayor, J., concurring). This unbidden, unwarranted look into people's lives chills these associations and is exactly the sort of government intrusion into people's private affairs the Fourth Amendment is intended to prevent.

Furthermore, it isn't just professional, religious, and sexual associations the government is able to discover from this metadata. This collection also reveals the associations people make with lawyers whose counsel they seek. In doing so this surveillance therefore causes an additional constitutional injury.

The Sixth Amendment right to counsel requires that clients be able to communicate freely and openly with the lawyers whose assistance they seek. Time-honored protections like attorney-client privilege, the work-product doctrine, and the duty of confidentiality ensure that clients have the privacy they need in order for this free and open communication to happen. In fact, these protections demonstrate that the expectation of confidentiality in lawyer-client communications is exactly the kind of legitimate expectation of privacy that society has

come to regard as reasonable, and that the Fourth Amendment therefore protects.

Yet this privacy protection is eviscerated when the government is able to build a database of those legal inquiries. The government is then able to use the metadata collected to identify suspects for criminal investigation. The Constitution requires the opposite: that the government develop probable cause before a search, not that it use the fruits of a dragnet search to identify suspects. By stripping these communications of their privacy through the warrantless, wholesale, indiscriminate collection of call records, this critical sphere of privacy is unconstitutionally invaded and the right to seek legal counsel unconstitutionally chilled.

## ARGUMENT

## I. The Government's Wholesale, Indiscriminate Collection Of All Call Records Violates The Sixth Amendment Right To Counsel

### A. The Sixth Amendment right to counsel depends on the privacy of communications between attorneys and clients.

The Sixth Amendment guarantees the right to counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."). The Supreme Court has interpreted this provision to grant the right to "effective" assistance of counsel. *McMann v. Richardson*, 397 U.S. 759,

4

771 n.14 (1970).  For assistance of counsel to be effective, however, the attorney-client relationship must be able to take root "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

Maintaining this sphere of privacy is particularly important when it comes to preserving the confidentiality of attorney-client communcations.  "The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

Privacy in these communications is preserved in part by the attorney-client privilege.  This privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted).  "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.  See also Swidler & Berlin v. United*

*States*, 524 U.S. 399, 403 (1998) (same); *Trammel v. United States*, 445 U.S. 40, 51 (1980) ("The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.").

Similarly, lawyers' independent ethical duty to protect the confidentiality of their clients' information also serves to protect the privacy in lawyer-client communications that is necessary to induce client candor. *See* Model Rules of Prof'l Conduct R. 1.6(a) (1983) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent. . . ."). This duty of confidentiality is even broader than attorney-client privilege. *X Corp. v. Doe*, 805 F. Supp. 1298, 1307-10 (E.D. Va. 1992), *aff'd mem.*, 17 F.3d 1435 (4th Cir. 1994). *See also* Model Rules of Prof'l Conduct R. 1.6 cmt. 3 (2011) ("The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law."). The ABA Model Rules of Professional Conduct explain the purpose and importance of this duty:

> [The ethical duty of confidentiality] contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost

6

without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

*Id.* cmt. 2.

Although the principles of lawyer-client confidentiality permeate all types of lawyer-client relationships, the need for privacy in attorney-client communications is particularly acute in the context of criminal defense, where liberty is at stake. With stakes so high, the American Bar Association has put forth standards stressing the importance for lawyers to protect the client's confidentiality in order to establish a relationship of trust and confidence with the accused. These Standards for Criminal Justice, to which the courts have looked often in determining the professional duties of criminal defense lawyers,[2] emphasize the necessity of this trust and confidence to prompt full disclosure by the client of all the facts the lawyer needs to know to put forth an effective defense. American Bar Association, *Standards for Criminal Justice*, Defense Function, § 4-3.1(a) (3d. ed. 1993). "Nothing is more fundamental to the lawyer-client relationship than the establishment of trust and confidence. Without it, the client may

---

[2] *See, e.g.*, *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010); *Gonzalez v. United States*, 553 U.S. 242, 249 (2008); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000).

withhold essential information from the lawyer.  Thus, important evidence may not be obtained, valuable defenses neglected, and, perhaps most significant, defense counsel may not be forewarned of evidence that may be presented by the prosecution." *Id.* at 149-50 (cmt. "Confidentiality").

Attorneys thus have a unique obligation to ensure the confidentiality of their communications with, and on behalf of, their clients, both actual and prospective, and to avoid employing means of communication that may compromise that confidentiality.  But today there is nothing an attorney can do to preserve confidentiality in their client communications.  By doing no more than using the telephone to facilitate attorney-client communications, the details of virtually every attorney-client communication are revealed to the government.  It is for this reason that the government surveillance at issue in this case is so problematic, because it is the clients' very act of pursuing the effective assistance of counsel that destroys the privacy necessary to obtain it. *See Swidler & Berlin*, 524 U.S. at 408 ("[W]e have said that the loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place.").

**B.   Because the bulk collection of telephone metatdata destroys the privacy of these lawyer-client communications, it violates the Sixth Amendment.**

The government surveillance at issue in this case is the purposeful capture of all or nearly all records of telephonic communications belonging to all Americans, and it is being done for the deliberate purpose of discovering inculpatory information about the people who have made these calls. *See*, *e.g.*, Oral Arg. Tr. 43 (ERII 54). It is not mere harmless interference with the attorney-client relationship; it cannot help but prejudice the client. *Cf., e.g., United States v. Irwin*, 612 F.2d 1182, 1186-87 (9th Cir. 1980) (interference with the attorney-client relationship violates the Sixth Amendment when it prejudices the client).

Indeed, what better way is there for the government to identify targets for investigation than by studying who has sought the help of counsel? That the government may not be capturing the specific contents of any particular lawyer-client communication under this program is irrelevant. Simply being able to learn of the existence of calls between lawyers and actual or prospective clients teaches the government volumes about the private legal affairs of those whose call records they have collected. It allows the government to use this unwarranted insight into people's lives as a lever against them.

The opportunities for the government to exploit the data it captures are very real. In one scenario particularly relevant to defense

9

counsel, a client has come to a lawyer, admitted to a shooting, and handed the lawyer the weapon. Although the lawyer has a duty of confidentiality to the client, the lawyer has a parallel obligation to turn over the physical evidence of the crime to the authorities, albeit without divulging any client confidences in the process. *See*, *e.g.*, *Clutchette v. Rushen*, 770 F.2d 1469, 1472 (9th Cir. 1985); Rodney J. Uphoff, *The Physical Evidence Dilemma: Does ABA Standard 4-4.6 Offer Appropriate Guidance?*, 62 Hastings L.J. 1177, 1189 (2011). *See also id.* at 1190 (citing Restatement (Third) of Law Governing Lawyers § 119(2) (2000)). If, however, the government now has the gun, the identity of the lawyer who had the gun, and access to a database containing a record of every phone call to and from the lawyer in the period leading up to the disclosure of the gun, the secrecy the client relied upon in order to seek legal counsel has just evaporated.

Even in situations where the client contacts the lawyer *after* an arrest, the information in the call records about who the lawyer called next (co-conspirators, fact witnesses, alibi witnesses, or testifying witnesses the lawyer does not yet have an obligation to disclose) can reveal a trove of client information that should have remained beyond the reach of the government. Instead, thanks to the government's unfettered access to this telephonic metadata, the government now can learn all sorts of information the principles of client confidentiality should have prevented it from learning.

10

Even if none of this collected data has, to date, been used against any particular person—and there are reasons to suspect that it already has been[3]—by merely capturing it the damage is done. Just knowing that it *could* be captured is enough to dissuade people from seeking legal advice, either in defense of past actions (charged or uncharged) or as to the legality of contemplated actions, despite the Sixth Amendment

---

[3] For example, Reuters reported that the DEA uses information provided by the NSA as the basis for ordinary domestic criminal investigations—and then obfuscates about where the information originated to make it appear as though the investigations were predicated on legitimately-acquired leads. John Shiffman & Kristina Cooke, *Exclusive: U.S. directs agents to cover up program used to investigate Americans*, Reuters (Aug. 5, 2013) *available at* http://www.reuters.com/article/2013/08/05/us-dea-sod-idUSBRE97409R20130805. Subsequent reports also suggest that the NSA makes all of its metadata available to other governmental agencies. Ryan Gallagher, *The Surveillance Engine: How the NSA Built its Own Secret Google*, The Intercept (Aug. 25, 2014) *available at* https://firstlook.org/theintercept/2014/08/25/icreach-nsa-cia-secret-google-crisscross-proton/. United States Senators Mark Udall, Ron Wyden and Martin Heinrich have also raised the concern that Solicitor General Donald Verrilli misled the Supreme Court at oral argument in *Clapper v. Amnesty International USA*, No. 11-025 (U.S. Oct. 29, 2012), when he represented to the Court that criminal defendants were routinely made aware of when evidence against them had been derived from the type of surveillance at issue in this case—when this assertion was not true. *See* Press Release, Ron Wyden, Udall, Wyden, Heinrich Urge Solicitor General to Set Record Straight on Misrepresentations to U.S. Supreme Court in Clapper v. Amnesty (Nov. 21, 2013), *available at* http://www.wyden.senate.gov/news/press-releases/udall-wyden-heinrich-urge-solicitor-general-to-set-record-straight-on-misrepresentations-to-us-supreme-court-in-clapper-v-amnesty.

guaranteeing them the right to.  "As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice."  *Fisher v. United States*, 425 U.S. 391, 403 (1976).  This chilling therefore constitutes the prejudice to clients sufficient to find the surveillance at issue violates the Sixth Amendment.

## II.   Because the Bulk Collection of Metadata Violates a Legitimate Expectation of Privacy in Lawyer-Client Communications, It Violates the Fourth Amendment

### A.   The government's bulk collection of phone metadata constitutes a "search" under the Fourth Amendment because it invades a legitimate expectation of privacy society recognizes as reasonable.

There is a legitimate expectation of privacy in lawyer-client communications.  *See* discussion Part I.A *supra*.  Given the necessity of this privacy in ensuring the right to counsel remains meaningfully available, it is also an expectation of privacy that society is prepared to recognize as reasonable.  *Id.*  Because the surveillance at issue in this case invades this privacy interest it represents a "search" under the Fourth Amendment.  *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (a "search" under the Fourth Amendment occurs "when the government violates a subjective expectation of privacy that society recognizes as

12

reasonable."). Because that search is performed without a warrant, it violates the Fourth Amendment.

This metadata surveillance constitutes a warrantless search even after *Smith v. Maryland*, 442 U.S. 735 (1979). In deciding *Smith v. Maryland*, the Supreme Court was considering the potential expectation of privacy in (1) specific call information (2) from a specific time period (3) belonging only to a specific individual (4) already suspected of a crime. *Id.* at 737. It was *not* considering how the bulk capturing of (1) all information relating to all calls (2) made during an open-ended time period (3) for all people, *including lawyers and the public seeking the assistance of counsel* (4) who may not have been suspected of any wrongdoing prior to the collection of these call records. Thus the Supreme Court never considered the possible impact its ruling would have on the particular expectation of privacy in lawyer-client communications that has been compromised by the surveillance here.

### B. This expectation of privacy can survive exposure to third parties.

In the context of attorney-client communications, exposure to a third party does not eliminate the expectation of privacy in the information exposed. Attorney-client privilege, for instance, is not necessarily waived when client information is handled by non-attorney agents of the lawyer:

> [T]he complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others; few lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts. "The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents."

*United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (quoting 8 Wigmore, *Evidence* § 2301 (McNaughton Rev. 1961)). This principle survives *Smith v. Maryland*. *See*, *e.g.*, *United States v. Richey*, 632 F.3d 559, 566 n.3 (9th Cir. 2011) (citing *Smith v. McCormick*, 914 F.2d 1153, 1159-60 (9th Cir. 1990)).

## C.   The expectation of privacy applies to identifying information.

*Smith v. Maryland* presumed, under the particular facts of that case, that because all that was collected by the government surveillance was the phone number, and not the contents of any communications, there was nothing private to protect. 442 U.S. at 741. But the expectation of privacy in lawyer-client communications often reaches client-identifying information. Extending privacy protection to this information is frequently necessary for the client to benefit from the assistance of counsel. For instance, in *Baird v. Koerner*, 279 F.2d 623, 630 (9th Cir. 1960), an attorney made tax payments owed by a client anonymously. This Court discussed the private and privileged nature of attorney-client communication metadata in that circumstance:

14

[A] disclosure of the persons employing the attorney-appellant would disclose the persons paying the tax; the fact of payment indicates clearly what is here specifically admitted, that an additional tax was payable and that the unknown clients owed it. But as yet the clients are unnamed. Suppose those unknown clients had related certain facts to their attorney, and asked that attorney for an opinion as to whether the clients, as taxpayers, owed the government additional taxes. Could the attorney be required to state the information given him in confidence by the clients, and the attorney's advice in response thereto? Or **could the government require every tax attorney to reveal the name of those clients who had consulted the attorney with respect to possible taxes payable, so that the government could institute investigations of all such taxpayers?**

**We think the answer is "no"** to both such questions. If it were not, the government could obtain by indirection, through demand for identity of a taxpayer, the information it seeks simply because a certain amount has been paid in as a tax in accordance with a tax law that permits such an anonymous payment. This would disclose the "ultimate motive of litigation" which Wigmore says the privilege should protect.

*Id.* (emphasis added).

There are thus many situations, particularly in the criminal defense context, where the identity of a client must be protected because its disclosure would adversely affect the client. *See* 279 F.2d at 630-31; *see also* Part I.B *supra* (an attorney must turn over physical evidence, but must not reveal the identity of the client who provided him with that evidence). If *Smith v. Maryland* applied to metadata dragnets, that privacy could not be protected, because metadata often reveals substantive information—sometimes information that the law

15

treats as private and, indeed, privileged.  But *Smith v. Maryland* did not address the sort of collection and aggregation of call records at issue here, let alone their implications for attorney-client communications. That is why *Smith v. Maryland* does not resolve this case.

## CONCLUSION

Because the wholesale, indiscriminate, and warrantless collection of telephonic metadata abrogates the Sixth Amendment right to counsel, and because the violation of the Sixth Amendment is instructive in identifying the violation of the Fourth Amendment, amicus NACDL respectfully urges this Court to reverse the judgement below and deem this surveillance unconstitutional.

DATED:  September 9, 2014                      Respectfully submitted,

Of Counsel:                                   */s/ Catherine R. Gellis*
                                              Catherine R. Gellis
David M. Porter                               P.O. Box 2477
9th Circuit Vice-chair, NACDL                 Sausalito, California 94966
Amicus Committee                             Telephone: 202-642-2849
801 I Street, 3rd Floor                       cathy@cgcounsel.com
Sacramento, CA  95814
Telephone:  916-498-5700                      Michael H. Page
E-mail:  david_porter@fd.org                  Joseph C. Gratz
                                              DURIE TANGRI LLP
                                              217 Leidesdorff Street
                                              San Francisco, CA 94111
                                              Telephone: 415-362-6666
                                              mpage@durietangri.com
                                              jgratz@durietangri.com

                                              *Attorneys for Amicus Curiae*

16

*National Association of Criminal Defense Lawyers*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A), because it is written in 14-point Century Schoolbook font, and with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), because it contains 3,617 words, excluding the portions excluded under Fed. R. App. P. 32(a)(7)(B)(iii).  This count is based on the word-count feature of Microsoft Word.


DATED:  September 9, 2014          */s/ Catherine R. Gellis*
                                   Catherine R. Gellis
                                   *Attorney for Amicus Curiae*

18

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on September 9, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that, for any participants in the case who are not registered CM/ECF users, I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days.


DATED:  September 9, 2014          */s/ Catherine R. Gellis*
                                   Catherine R. Gellis
                                   *Attorney for Amicus Curiae*