No. 14-35555

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANNA J. SMITH

                Plaintiff-Appellant,

v.

BARACK OBAMA et al.

                Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

**SUPPLEMENTAL BRIEF FOR THE APPELLEES**

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney*
  *General*

WENDY J. OLSON
  *United States Attorney*

DOUGLAS N. LETTER
H. THOMAS BYRON III
HENRY C. WHITAKER
  *(202) 514-3180*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 2

CONCLUSION .................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Brown* v. *Plata*,
   131 S. Ct. 1910 (2011) .................................................................................. 5

*Burke* v. *Barnes*,
   479 U.S. 361 (1987) ..................................................................................... 6

*Fendler* v. *U.S. Parole Comm'n*,
   774 F.2d 975 (9th Cir. 1985) ........................................................................ 8

*Grimes* v. *Comm'r of IRS*,
   82 F.3d 286 (9th Cir. 1996) .......................................................................... 7

*Herring* v. *United States*,
   555 U.S. 135 (2009) ..................................................................................... 7

*In re Application of the FBI for an Order Requiring the Production of Tangible Things,* Dkt. Nos. BR 15-77, 15-78 (F.I.S.C. June 17, 2015), http://www.fisc.uscourts.gov/sites/default/files/BR%2015-77%2015-78%20Memorandum%20Opinion.pdf .................................................. 3

*INS* v. *Lopez-Mendoza*,
   468 U.S. 1032 (1984) ................................................................................... 7

*Log Cabin Republicans* v. *United States*,
   658 F.3d 1162 (9th Cir. 2011) ...................................................................... 6

*Miller* v. *French*,
   530 U.S. 327 (2000) ..................................................................................... 5

*Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) ....................................................................................... 5

*Penn. Bd. of Prob. & Parole* v. *Scott*,
   524 U.S. 357 (1998) ..................................................................................... 7

*Ramsden* v. *United States*,
   2 F.3d 322 (9th Cir. 1993) ............................................................................ 7

*Salazar* v. *Buono*,
 559 U.S. 700 (2010) .................................................................................................... 5

*U.S. Dep't of the Treasury* v. *Galioto*,
 477 U.S. 556 (1986) .................................................................................................... 6

*United States* v. *Crowell*,
 374 F.3d 790 (9th Cir. 2004) ..................................................................................... 6

*United States* v. *Smith*,
 940 F.2d 395 (9th Cir. 1991) ..................................................................................... 8

*United States* v. *Sumner*,
 226 F.3d 1005 (9th Cir. 2000) ................................................................................... 6

*Wilkie* v. *Robbins*,
 551 U.S. 537 (2007) .................................................................................................... 7

**Statutes:**

PATRIOT Sunsets Extension Act of 2011,
 Pub. L. No. 112-14, § 2(a), 125 Stat. 216 ................................................................ 2

USA FREEDOM Act of 2015,
 Pub. L. No. 114-23, 129 Stat. 268 ............................................................... 1, 3, 4, 6

18 U.S.C. § 2712 ................................................................................................................ 7

50 U.S.C. § 1806(e) ........................................................................................................... 7

50 U.S.C. § 1810 ................................................................................................................ 7

50 U.S.C. § 1825(f) ........................................................................................................... 7

50 U.S.C. § 1828 ................................................................................................................ 7

50 U.S.C. § 1845(e) ........................................................................................................... 7

50 U.S.C. § 1861 ................................................................................................................ 2

**Legislative Materials:**

161 Cong. Rec. S3439 (daily ed. June 2, 2015) ................................................................... 3

161 Cong. Rec. S3439-3440 (daily ed. June 2, 2015) ......................................................... 4

## INTRODUCTION

We explained in our merits brief why plaintiff lacks standing to sue and why there is no basis for holding the Section 215 bulk telephony-metadata program unconstitutional. This supplemental brief addresses the Court's request for additional briefing on the effect of the recently enacted USA FREEDOM Act of 2015, Pub. L. No. 114-23, 129 Stat. 268, on this case—specifically whether plaintiff's claims are moot, and whether the case should be remanded to the district court to determine whether plaintiff would be entitled to the remedies she seeks even if (contrary to our arguments) she had standing and a valid claim on the merits.

The new legislation establishes a 180-day transition period, during which the bulk collection of telephony metadata may continue, to allow for the orderly termination of the National Security Agency's bulk production program. Following the transition period, the statute prohibits the bulk collection of telephony metadata under Section 215 and authorizes the government to seek targeted production of certain telephony metadata records after first having obtained authorization from the Foreign Intelligence Surveillance Court (except in emergencies). That framework, however, does not take effect until 180 days after enactment (November 29, 2015), reflecting the judgment of Congress that an orderly transition from the existing program is appropriate.

Plaintiff seeks two kinds of remedies: prospective relief in the form of both an injunction and declaratory relief against the Section 215 bulk telephony-metadata program; and a retrospective purge of the Section 215 database of any business records containing information about plaintiff's telephone calls that may have been collected under that program. ER 126.

Plaintiff's claims for prospective relief will be moot when the Section 215 bulk collection regime of telephony metadata ends in less than six months, though they are not moot right now. In the meantime, however, the Court should respect Congress's decision to create an orderly transition away from the Section 215 bulk telephony-metadata program. Especially in light of Congress's considered judgment that the program should continue for this limited period, plaintiff is not entitled to any of the (solely equitable) relief she requests against that program, including expungement. The Court may wish to remand to the district court, without reaching the merits, for the district court to decide the impact of the new legislation on this case in the first instance.

## ARGUMENT

**1.** Section 215 of the USA PATRIOT Act, enacted in 2001, amended 50 U.S.C. § 1861 and was the source of the government's statutory authority to conduct the Section 215 bulk telephony-metadata program. *See* Gov't Br. 6-7. Section 215 expired, pursuant to the statutory sunset period, on June 1, 2015. *See* PATRIOT Sunsets Extension Act of 2011, Pub. L. No. 112-14, § 2(a), 125 Stat. 216.

On June 2, 2015, Congress enacted the USA FREEDOM Act. First, Congress reauthorized Section 215 and set a new sunset date of December 15, 2019, for that provision to expire. *See* USA FREEDOM Act § 705(a); *see* 161 Cong. Rec. S3439 (daily ed. June 2, 2015) (statement of Sen. Lee) (Congress's "intent in passing the USA FREEDOM Act is that the expired provisions be restored in their entirety just as they were on May 31, 2015, except to the extent they have been amended by the USA FREEDOM Act."); *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, Dkt. Nos. BR 15-77, 15-78, at 8-13 (F.I.S.C. June 17, 2015) (holding that the USA FREEDOM Act reinstated Section 215 as amended by the statute), http://www.fisc.uscourts.gov/sites/default/files/BR%2015-77%2015-78%20Memorandum%20Opinion.pdf.

Second, the new statute will prohibit the government from conducting the bulk collection of telephony metadata under Section 215 180 days after enactment. *See* USA FREEDOM Act § 103. Congress replaced bulk telephony-metadata collection under Section 215 with a new mechanism providing for the targeted production of call detail records and other tangible things subject to the statute. *See id.* § 101.

Finally, Congress delayed the effective date of that prohibition on bulk collection under Section 215, and the corresponding implementation of the new regime of targeted production under the statute, for 180 days, to provide for an orderly transition away from that bulk collection regime. USA FREEDOM Act § 109(a). Congress specified that the USA FREEDOM Act does not during that

3

period "alter or eliminate" the government's longstanding authority, as reflected in numerous opinions from the Foreign Intelligence Surveillance Court, to conduct bulk-collection activities under Section 215. *See id.* § 109(b). During that 180-day transition period, then, the former version of Section 215 remains fully in effect as part of that orderly transition and permits the government to continue such bulk collection. 161 Cong. Rec. S3439-3440 (daily ed. June 2, 2015) (statement of Sen. Leahy) (noting that Congress "included a provision to allow the government to collect call detail records, CDRs, for a 180-day transition period, as it was doing pursuant to Foreign Intelligence Surveillance Court orders prior to June 1, 2015").

Pursuant to that authority, the government has applied to the Foreign Intelligence Surveillance Court for authorization to resume the Section 215 bulk-collection program during that transition period. *See* Mem. of Law, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, Dkt. No. BR 15-75 (F.I.S.C. June 2, 2015), http://www.fisc.uscourts.gov/sites/default/files/Misc%2015-01%20Memorandum%20of%20Law.pdf. That request remains pending.

**2.** Congress's decision to permit the government to conduct bulk collection of telephony metadata under Section 215 during this orderly transition period makes clear that plaintiff would not be entitled to any of the (solely equitable) relief she seeks, *see* ER 126, even if she stated a claim on the merits and even if she had standing to sue.

4

Now that Congress has provided for an orderly transition period during which Section 215 bulk collection expressly continues to be permitted but is strictly time-limited, equitable relief is inappropriate. A plaintiff's entitlement to such relief should be informed by legislation that is enacted during the pendency of litigation. *See, e.g.*, *Miller* v. *French*, 530 U.S. 327, 347 (2000); *Salazar* v. *Buono*, 559 U.S. 700, 718 (2010). Equally, congressional legislation can channel a federal court's exercise of its equitable discretion to fashion the permissible remedies for an alleged constitutional violation. *See Brown* v. *Plata*, 131 S. Ct. 1910, 1944, 1946 (2011) (applying the requirements of the Prison Litigation Reform Act to remedies for unconstitutional prison conditions and giving the state two years to comply with determination that prison-overcrowding conditions violated the Constitution); *cf. Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 88-89 (1982).

The USA FREEDOM Act reflects Congress's determination to authorize Section 215 bulk telephony-metadata collection to continue during a brief transitional winding-down period before the new framework of targeted telephony-metadata production takes effect. Congress thus judged that the sort of abrupt, immediate interference with the program that plaintiff seeks would be contrary to the public interest, confirming that equitable relief is inappropriate quite apart from the government's standing and merits arguments. The USA FREEDOM Act reflects the considered judgment of the political branches that the government's paramount interest in having this temporary transition program to combat the continuing

5

terrorist threat strongly outweighs plaintiff's minimal privacy interests, particularly because plaintiff has not demonstrated that the government obtained, much less analyzed, any telephony metadata about her calls under the program at issue here. *See* Gov't Br. 29-36.

**3.** Once the 180-day transition period ends, and with it the government's authority to conduct ongoing bulk telephony-metadata collection under Section 215, plaintiff's claims for prospective declaratory and injunctive relief against that program will be moot. *See, e.g.*, *Log Cabin Republicans* v. *United States*, 658 F.3d 1162, 1166-67 (9th Cir. 2011) (per curiam); *see also, e.g.*, *Burke* v. *Barnes*, 479 U.S. 361, 363-64 (1987); *U.S. Dep't of the Treasury* v. *Galioto*, 477 U.S. 556, 559-60 (1986). But those claims are not moot during the 180-day transition period.

The only other remedy plaintiff seeks is for the government to "purge all of [sic] metadata of" plaintiff's "communications collected" under the Section 215 program at issue here. ER 126. She is not entitled to this remedy either.

First, expungement is not available here as a matter of law. This Court has questioned whether the federal courts have inherent authority, untethered to any statutory authorization, to order expungement of records. *See United States* v. *Crowell*, 374 F.3d 790, 796 (9th Cir. 2004); *United States* v. *Sumner*, 226 F.3d 1005, 1014-15 (9th Cir. 2000). There is no statutory basis for ordering records unlawfully obtained under Section 215 to be expunged, though Congress in the Foreign Intelligence Surveillance Act and related provisions established a number of other remedies—including in

some instances suppression in particular proceedings—for records unlawfully obtained, none of which apply here. *See e.g.,* USA FREEDOM Act § 102(a)(i)(5); 50 U.S.C. §§ 1806(e), 1825(f), 1845(e) (suppression remedies under FISA); 50 U.S.C. §§ 1810, 1828 (damages remedies under FISA); 18 U.S.C. § 2712 (no injunctive remedy against the government under the Stored Communications Act). The Court should respect Congress's remedial choice. *See, e.g., Wilkie* v. *Robbins*, 551 U.S. 537, 549-51 (2007) (noting that Congress may displace the *Bivens* damages remedy for constitutional violations).

To be sure, the Supreme Court has adopted in certain circumstances the exclusionary rule as a remedy in criminal cases. But the Court has also held that, outside the context of criminal trials, that rule does not foreclose the government from using the fruits of unlawful searches or seizures. *See, e.g., Penn. Bd. of Prob. & Parole* v. *Scott*, 524 U.S. 357, 362 (1998); *INS* v. *Lopez-Mendoza*, 468 U.S. 1032, 1042-50 (1984). A decision to exclude evidence can be justified only when the social costs of the rule are substantially outweighed by its deterrent value. *See, e.g., Herring* v. *United States,* 555 U.S. 135, 141 (2009). Here, no deterrence is needed, or even possible, in light of the imminent end of the Section 215 bulk telephony-metadata program. It is even less plausible that plaintiff would have a right to have expunged whatever business records the government may have acquired under Section 215 that contain telephony metadata about her calls (which again there is no evidence the government has done). *See Grimes* v. *Comm'r of IRS*, 82 F.3d 286, 291 (9th Cir. 1996) (holding that

the Internal Revenue Service was entitled to retain copies of unlawfully seized tax records); *Ramsden* v. *United States*, 2 F.3d 322, 327 (9th Cir. 1993) (similar).

Second, even if expungement were available in theory, it is an "equitable power . . . appropriately used only in extreme circumstances," *United States* v. *Smith*, 940 F.2d 395, 396 (9th Cir. 1991), and then only on a showing of a "real and immediate threat of irreparable harm." *Fendler* v. *U.S. Parole Comm'n*, 774 F.2d 975, 979 (9th Cir. 1985). We have already demonstrated that plaintiff is not entitled to an equitable remedy in light of the USA FREEDOM Act, and her failure to demonstrate any harm to her as a result of the Section 215 program.

**4.** For the foregoing reasons, none of the requested relief is available to plaintiff in light of the USA FREEDOM Act even if she had a valid claim on the merits. The Court could properly dispose of the case on that ground without reaching the constitutional claims in this case.

The Court may wish to remand the case to district court for the district court to decide in the first instance the effect of the USA FREEDOM Act on the jurisdictional and remedial issues in this case. The district court could then determine as a threshold matter whether some or all of the case is or will be moot in light of the USA FREEDOM Act, and whether the requested relief, including expungement, is legally foreclosed or would be unavailable as a matter of equity, even if plaintiff had demonstrated Article III standing and had a valid claim on the merits. In this way, this Court could potentially avoid a constitutional decision on the merits.

## CONCLUSION

For the foregoing reasons, plaintiff is not entitled to any of her requested relief in light of the enactment of the USA FREEDOM Act. The Court may wish to remand the case to district court for the district court to decide the effect of the USA FREEDOM Act on this litigation in the first instance.

          Respectfully submitted,

          BENJAMIN C. MIZER
            *Principal Deputy Assistant Attorney General*

          DOUGLAS N. LETTER
          H. THOMAS BYRON III
          /s/ Henry C. Whitaker
          HENRY C. WHITAKER
            *(202) 514-3180*
            *Attorneys, Appellate Staff*
            *Civil Division, Room 7256*
            *U.S. Department of Justice*
            *950 Pennsylvania Ave., N.W.*
            *Washington, D.C. 20530*

JUNE 2015

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2015, I filed this Supplemental Brief by filing with the court using the appellate CM/ECF system.

I certify that the participants in this case are registered CM/ECF filers and that service upon them will be accomplished by the CM/ECF system.

/s/ Henry C. Whitaker
HENRY C. WHITAKER