No. 14-35555

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ANNA J. SMITH,

*Plaintiff–Appellant,*

v.

BARACK OBAMA, *et al.*,

*Defendant–Appellees.*

---

On Appeal from the United States District Court
for the District of Idaho, Boise; Case No. 2:13-cv-00257-BLW
The Honorable B. Lynn Winmill, Chief District Judge

---

## PLAINTIFF-APPELLANT'S REQUEST FOR JUDICIAL NOTICE OF A LETTER FROM THE DEPARTMENT OF JUSTICE TO THE FOREIGN INTELLIGENCE SURVEILLANCE COURT

---

Peter J. Smith IV
Lucas T. Malek
Smith + Malek, PLLC
1250 W. Ironwood Dr.,
Suite 316
Coeur d'Alene, ID
83814
Tel: (208) 505-8971
Fax: (208) 505-8978
peter@smithmalek.com

Cindy Cohn
David Greene
Hanni Fakhoury
Andrew Crocker
ELECTRONIC
FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA
94109
Tel: (415) 436-9333
Fax: (415) 436-9993
cindy@eff.org

Jameel Jaffer
Alex Abdo
Patrick Toomey
AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION
125 Broad St.,
18th Floor
New York, NY
10004
Tel: (212) 549 2500
Fax: (212) 549-2654
jjaffer@aclu.org

Richard Alan Eppink
AMERICAN CIVIL
LIBERTIES UNION
OF IDAHO
FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
Fax: (208) 344-7201
reppink@acluidaho.org

*Counsel for Plaintiff-Appellant Anna J. Smith*

**PLAINTIFF–APPELLANT'S REQUEST FOR JUDICIAL NOTICE**

Pursuant to Federal Rule of Evidence 201 and the inherent authority of the Court, Plaintiff–Appellant respectfully requests that the Court take judicial notice of a fact established by a government filing in the Foreign Intelligence Surveillance Court ("FISC") made by the National Security Division of the Department of Justice, and an order of the FISC attached hereto as Exhibits A and B. The documents confirm, consistent with Plaintiff–Appellant's arguments, that Verizon Wireless has participated in the NSA's phone records program. Plaintiff-Appellant respectfully requests that the Court take judicial notice of this fact.

The filing in Exhibit A was made in connection with a FISC proceeding, Docket Number BR 10-10, in which the government requested and was granted an order compelling telecommunications companies to produce telephone call records. The phone records order the FISC issued in Docket Number BR 10-10 is attached hereto as Exhibit B. The filing in Exhibit A identifies in its caption the following telecommunications companies that were compelled by the order in BR 10-10 to produce the telephone records of their customers:

In Re Application of the Federal Bureau of Investigation for an Order Requiring the Production of Tangible Things from AT&T, the Operating

> Subsidiaries of Verizon Communications, Inc., and Cellco Partnership d/b/a
>
> Verizon Wireless, and Sprint.

Exhibit A at 1. In other words, the letter confirms the participation of Verizon Wireless in the NSA's call-records program.

Exhibit A was released in response to a Freedom of Information Act lawsuit, *see* Scheduling Order, *New York Times v. NSA*, ECF No. 10, No. 15-2383 (S.D.N.Y May 15, 2015) and was made public on August 15. Exhibit B was released by the Director of National Intelligence on his official website. It concerns a "compliance incident" in the NSA's call-records program—the same program at issue in this lawsuit.

In this case, the government has claimed that "there is no evidence in the record that the government has acquired metadata from Verizon Wireless under the Section 215 program" and that, as a Verizon Wireless customer, Plaintiff–Appellant therefore cannot demonstrate the government collected her records. Opp. Br. at 30-31. However, the attached government filing and FISC court order demonstrate that the NSA has indeed collected phone records in bulk from Verizon Wireless under section 215. This is consistent with the other evidence of Verizon Wireless' participation previously relied on by Appellant. Opening Br. 36-38; Reply Br. 20-22.

**LEGAL AUTHORITIES IN SUPPORT OF THIS REQUEST FOR JUDICIAL NOTICE**

Federal Rule of Evidence 201 authorizes this Court to take judicial notice of the fact of Verizon Wireless's participation in the section 215 phone records program. That fact "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. Rule Evid. 201(b); *Singh v. Ashcroft*, 393 F.3d 903, 905 (9th Cir. 2004). Further, the Rule mandates that judicial notice must be taken "if a party requests it and the court is supplied with the necessary information," *id.* at 201(d), and authorizes judicial notice "at any stage of the proceeding," *id.* at 201(f), including on appeal. *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (Ninth Circuit "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

The fact of Verizon Wireless's participation can and should be judicially noticed because it is established by sources whose accuracy cannot reasonably be questioned and therefore is not subject to reasonable dispute. Both exhibits are records of the FISC that have become matters of public record. Exhibit A was released by the government in response to a FOIA request, making it a matter of public record. *See In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1064 (C.D. Cal. 2012) (citation omitted). Exhibit B was publicly released by the

Director of National Intelligence, and remains available at http://www.dni.gov/files/documents/11714/FISC%20Order,%20BR%2010-10.pdf.

## CONCLUSION

Accordingly, Plaintiff–Appellant respectfully requests that this Court take judicial notice that Verizon Wireless has participated in the NSA's phone records program.

Dated: September 9, 2015        Respectfully submitted,

By:   s/ Peter J. Smith IV
      Peter J. Smith IV
      Lucas T. Malek
      Smith + Malek, PLLC
      1250 W. Ironwood Drive, Suite 316
      Coeur d'Alene, ID 83814

      Cindy Cohn
      David Greene
      Hanni Fakhoury
      Andrew Crocker
      ELECTRONIC FRONTIER
      FOUNDATION
      815 Eddy Street
      San Francisco, CA 94109

      Jameel Jaffer
      Alex Abdo
      Patrick Toomey
      AMERICAN CIVIL LIBERTIES UNION
      FOUNDATION
      125 Broad St., 18th Floor
      New York, NY 10004

Richard Alan Eppink
AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701

*Counsel for Plaintiff-Appellant*
*ANNA J. SMITH*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 9, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: September 9, 2015      Respectfully submitted,

By:   */s/ Peter J. Smith IV*
        Peter J. Smith IV
        Smith + Malek, PLLC

        *Counsel for Plaintiff-Appellant*
        *ANNA J. SMITH*

# Exhibit A

# Exhibit A

DOCID: 4230249                    REF ID:A4197247



**U.S. Department of Justice**

*National Security Division* SURV

2010 AUG -2 PM 4:32

TOP SECRET//COMINT//NOFORN

*Washington, D.C. 20530*

The Honorable John D. Bates
United States Foreign Intelligence Surveillance Court
U.S. Courthouse
333 Constitution Avenue, N.W.
Washington, D.C. 20001

  Re:  Compliance Incident Involving In Re Application of the Federal Bureau of
     Investigation for an Order Requiring the Production of Tangible Things from
     AT&T, the Operating Subsidiaries of Verizon Communications Inc., and Cellco
     Partnership d/b/a Verizon Wireless, and Sprint Relating to al Qaeda and
     Associated Terrorist Organizations and Unknown Persons in the United States
     and Abroad Affiliated with al Qaeda and Associated Terrorist Organizations and
     the Government of Iran and Associated Terrorist Organizations and Unknown
     Persons in the United States and Abroad Affiliated with the Government of Iran
     and Associated Terrorist Organizations, Docket Number BR 10-10. (TS)

Dear Judge Bates:

  Pursuant to Rule 10(c) of the Foreign Intelligence Surveillance Court (FISC) Rules of
Procedure, effective February 17, 2006, this letter further advises the Court of a compliance
incident regarding docket number BR 10-10. A preliminary notice regarding the incident was
filed with the Court on July 26, 2010. (S)

  On February 26, 2010, in docket number BR 10-10, Judge Reggie B. Walton approved an
application for tangible things. Judge Walton renewed that authority on May 14, 2010, in docket
number BR 10-17, expiring on August 6, 2010. The Court's Primary Order in docket number
BR 10-10 states: "The BR metadata may be accessed for the purposes of ensuring data integrity
and developing and testing any technological measures designed to enable the NSA to comply
with the Court's orders." Docket Number BR 10-10, Primary Order at 5. "Persons who query
the BR metadata pursuant to this paragraph may only share the results of any such query with
other specially-cleared NSA technical personnel," with limited exceptions, including when "a
data integrity analyst [DIA] conduct[s] the query using a RAS-approved telephone identifier at
the request of an analyst authorized to query the BR metadata" *Id.* at 5-6. (TS//SI//NF)

  On July 16, 2010, the National Security Agency (NSA) advised the Department of
Justice's National Security Division of the compliance incident described below:

TOP SECRET//COMINT//NOFORN

Classified by: <u>David S. Kris, Assistant</u>
       <u>Attorney General, NSD, DOJ</u>
Reason:   <u>1.4(c)</u>
Declassify on: <u>2 August 2035</u>

DOCID: 4230249        REF ID:A4197247

**TOP SECRET//COMINT//NOFORN**

○    On March 9, 2010, a DIA queried the BR metadata in response to a Federal Bureau of
Investigation (FBI) request for certain information relating to a United States telephone
identifier referenced in a previously issued NSA report. Specifically, the FBI inquired
whether the BR metadata contained information indicating that the identifier was
roaming during in the ▇▇▇▇ to ▇▇▇▇ time frame. (TS//SI//NF)

○    The reasonable, articulable suspicion (RAS) approval for the identifier expired on
▇▇▇▇, ▇▇▇, ▇▇▇▇ before the query. (It had been RAS-approved on ▇▇▇▇,
▇▇▇.) Still, the identifier was listed on the Station Table – historically, NSA's list of
identifiers that have undergone RAS determinations – as RAS-approved until ▇▇▇▇,
▇▇▇ at which time its status was changed to "not approved." (TS//SI//NF)

○    The DIA used the identifier to conduct a single query of the BR metadata in the
Transaction Database. Although the preliminary notice of this incident reported that
the query was time-bounded to the period of ▇▇▇▇ through ▇▇▇▇, the
query was not time-bounded. Rather, the DIA focused his review of the query results
to the time period referenced in the FBI's request for information. (TS//SI//NF)

○    Based on the query results, the DIA determined that no roaming data was available for
the identifier, and NSA provided that information to the FBI. NSA did not issue a
report based on this query. (TS//SI//NF)

    This incident was discovered by the staff of NSA's Inspector General through their
review of controls used to comply with the Court's Orders in this matter. NSA confirms that it
conducted no queries using the identifier after the DIA's query described above. (TS//SI//NF)

    At the time of this incident, NSA managed the RAS-approval status of identifiers on the
Station Table through a periodic, manual review of those identifiers. NSA assesses that this
compliance incident resulted from delays in the manual review process. NSA further assesses
that a technical modification likely will prevent this sort of compliance incident from occurring
in the future. In June 2010, NSA implemented a new program to manage and track requests to
approve the use of identifiers that meet the RAS standard. This new program, among other
things, automatically changes an identifier's status to "not approved" if it has not been re-
approved for RAS within the time frame specified by the Court's orders. (TS//SI//NF)

    ▇▇▇▇, Global Capabilities Manager, Counterterrorism, reviewed a draft of this
letter and confirmed its accuracy. (U)

                                            Sincerely,


                                            Section Chief, Oversight
                                            National Security Division
                                            U.S. Department of Justice

cc:  The Honorable Reggie B. Walton

**TOP SECRET//COMINT//NOFORN**

# Exhibit B

# Exhibit B

TOP SECRET//COMINT//NOFORN

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D.C.

IN RE APPLICATION OF THE FEDERAL
BUREAU OF INVESTIGATION FOR AN
ORDER REQUIRING THE PRODUCTION
OF TANGIBLE THINGS FROM



Docket Number: BR

10-10

PRIMARY ORDER

A verified application having been made by a designee of

the Director of the Federal Bureau of Investigation (FBI), the

Deputy Director of the FBI, for an order pursuant to the Foreign

Intelligence Surveillance Act of 1978 (the Act), Title 50,

United States Code (U.S.C.), § 1861, as amended, requiring the

production to the National Security Agency (NSA) of the tangible

TOP SECRET//COMINT//NOFORN

Derived from: Pleadings in the above-captioned docket
Declassify on: 19 February 2035

TOP SECRET//COMINT//NOFORN

things described below, and full consideration having been given to the matters set forth therein, the Court finds as follows:

1.  There are reasonable grounds to believe that the tangible things sought are relevant to authorized investigations (other than threat assessments) being conducted by the FBI under guidelines approved by the Attorney General under Executive Order 12333 to protect against international terrorism, which investigations are not being conducted solely upon the basis of activities protected by the First Amendment to the Constitution of the United States.  [50 U.S.C. § 1861(c)(1)]

2.  The tangible things sought could be obtained with a subpoena duces tecum issued by a court of the United States in aid of a grand jury investigation or with any other order issued by a court of the United States directing the production of records or tangible things.  [50 U.S.C. § 1861(c)(2)(D)]

3.  The application includes an enumeration of the minimization procedures the government proposes to follow with regard to the tangible things sought. Such procedures are similar to the minimization procedures approved and adopted as binding by the order of this Court in Docket Number BR 09-19 and its predecessors.  [50 U.S.C. § 1861(c)(1)]

Accordingly, the Court finds that the application of the United States to obtain the tangible things, as described below,

TOP SECRET//COMINT//NOFORN

satisfies the requirements of the Act and, therefore,

IT IS HEREBY ORDERED, pursuant to the authority conferred

on this Court by the Act, that the application is GRANTED, and

it is

FURTHER ORDERED, as follows:

(1)A.  The Custodians of Records of ██████████ shall

produce to NSA upon service of the appropriate secondary order,

and continue production on an ongoing daily basis thereafter for

the duration of this order, unless otherwise ordered by the

Court, an electronic copy of the following tangible things:  all

call detail records or "telephony metadata"[1] created by ██████

██████

B.  The Custodian of Records of ████████████████

████████████████████████████████████

████████████████████████████████████

██████ shall produce to NSA upon service of the appropriate

secondary order, and continue production on an ongoing daily

---

[1] For purposes of this Order "telephony metadata" includes
comprehensive communications routing information (e.g.,
originating and terminating telephone number, International
Mobile Subscriber Identity (IMSI) number, International Mobile
station Equipment Identity (IMEI) number, etc.), trunk
identifier, telephone calling card numbers, and time and
duration of call.  Telephony metadata does not include the
substantive content of any communication, as defined by 18
U.S.C. § 2510(8), or the name, address, or financial information
of a subscriber or customer.

TOP SECRET//COMINT//NOFORN

3

basis thereafter for the duration of this order, unless otherwise ordered by the Court, an electronic copy of the following tangible things:  all call detail records or "telephony metadata" created by ████████ for communications (i) between the United States and abroad; or (ii) wholly within the United States, including local telephone calls. ████████

████████████████████████████████████████

(2)  With respect to any information the FBI receives as a result of this Order (information that disseminated to it by NSA), the FBI shall follow as minimization procedures the procedures set forth in The Attorney General's Guidelines for Domestic FBI Operations (September 29, 2008).

(3)  With respect to the information that NSA receives as a result of this Order, NSA shall strictly adhere to the following minimization procedures:

A.  The government is hereby prohibited from accessing business record metadata acquired pursuant to this Court's orders in the above-captioned docket and its predecessors ("BR metadata") for any purpose except as described herein. Notwithstanding the requirements set forth below, Executive Branch and Legislative Branch personnel may be permitted

TOP SECRET//COMINT//NOFORN

appropriate access to the BR metadata and certain information derived therefrom in order to facilitate their lawful oversight functions, which include, but are not limited to, those set forth below.

B. The BR metadata may be accessed for the purposes of ensuring data integrity and developing and testing any technological measures designed to enable the NSA to comply with the Court's orders. Access to the BR metadata for such purposes shall be limited to the NSA Collection Managers, Data Integrity Analysts, and System Administrators described in paragraph 16 of the Declaration of ████████████ Chief, Special FISA Oversight and Processing, Oversight and Compliance, Signals Intelligence Directorate, the National Security Agency, filed as Exhibit A to the Application in the above-captioned docket (████ Declaration"). Additional individuals directly involved in developing and testing technologies to be used with the BR metadata may be granted access to the BR metadata, provided such access is approved by NSA's Office of General Counsel (OGC) on a case-by-case basis. Persons who query the BR metadata pursuant to this paragraph may only share the results of any such query with other specially-cleared NSA technical personnel, unless: (i) sharing is permitted under paragraph 3(J); or (ii) a data integrity analyst conducted the query using a RAS-approved

TOP SECRET//COMINT//NOFORN

telephone identifier at the request of an analyst authorized to query the BR metadata pursuant to paragraph 3(C) below, or an analyst authorized to receive query results pursuant to paragraph 3(I) below.[2] Queries performed by the persons described in this paragraph shall not be subject to the approval process and standard set forth in paragraph (3)C below. To the extent NSA personnel make copies of the BR metadata for purposes of ensuring data integrity or developing and testing technological measures, such copies shall be destroyed upon the completion of their work.

C.  Subject to the restrictions and procedures below, up to 125 NSA analysts may be authorized to access the BR metadata for purposes of obtaining foreign intelligence information through contact chaining ████████████ ("queries") using telephone identifiers,[3] as described in the ████ Declaration at paragraphs 8-13.

---

[2] The Court understands that only Data Integrity Analysts who have received the training required for access under paragraph 3(C) will be permitted to perform queries and share query results with analysts as described in (ii) above.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

TOP SECRET//COMINT//NOFORN

(i)   Except as provided in subparagraph (ii) below, all telephone identifiers to be used for queries shall be approved by one of the following designated approving officials: the Chief, Special FISA Oversight and Processing, Oversight and Compliance, Signals Intelligence Directorate; the Chief or Deputy Chief, Homeland Security Analysis Center; or one of the twenty specially-authorized Homeland Mission Coordinators in the Analysis and Production Directorate of the Signals Intelligence Directorate.  Such approval shall be given only after the designated approving official has determined that based on the factual and practical considerations of everyday life on which reasonable and prudent persons act, there are facts giving rise to a reasonable, articulable suspicion that the telephone identifier to be queried is associated with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

billing and/or routing communications, such as IMSI, IMEI, and calling card numbers.



TOP SECRET//COMINT//NOFORN



provided, however, that NSA's OGC shall first determine

that any telephone identifier reasonably believed to be

TOP SECRET//COMINT//NOFORN

used by a United States (U.S.) person is not regarded as

associated with ███████████████████████████████

███████████████████████████████████████████████

████████████████████ solely on the basis of activities

that are protected by the First Amendment to the

Constitution.[6]

(ii)  Telephone identifiers that are currently

the subject of electronic surveillance authorized by

the Foreign Intelligence Surveillance Court (FISC)

based on the FISC's finding of probable cause to

believe that they are used by agents of ████████████

██████████████████████████████████████████████

██████████████████████████████████████

_____

████████████████████████████████████████████████

[6] The Court understands that from time to time the information
available to designated approving officials will indicate that a
telephone identifier was, but may not presently be, or is, but
was not formerly, associated with ██████████████████████████
████████████████████████  In such a circumstance, so long as the
designated approving official can determine that the reasonable,
articulable suspicion standard can be met for a particular
period of time with respect the telephone identifier, NSA may
query the BR metadata using that telephone identifier.  However,
analysts conducting queries using such telephone identifiers
must be made aware of the time period for which the telephone
identifier has been associated with ████████████████████████
█████████████████████  in order that the analysis and

TOP SECRET//COMINT//NOFORN

9

TOP SECRET//COMINT//NOFORN

including those used by U.S. persons, may be deemed
approved for querying for the period of FISC-
authorized electronic surveillance without review and
approval by a designated approving official.  The
preceding sentence shall not apply to telephone
identifiers under surveillance pursuant to any
certification of the Director of National Intelligence
and the Attorney General pursuant to Section 702 of
FISA, as added by the FISA Amendments Act of 2008, or
pursuant to an Order of the FISC issued under Section
703 or Section 704 of FISA, as added by the FISA
Amendments Act of 2008.

   (iii)  A determination by a designated approving
official that a telephone identifier is associated
with ███████████████████████████████████████████
████████████████████████████████████████████
█████████████████  shall be effective for:  one hundred
eighty days for U.S. telephone identifiers and for any
identifiers believed to be used by a U.S. person; one
year for all other telephone identifiers.[7]

---

minimization of the information retrieved from their queries may
be informed by that fact.

[7] The Court understands that call detail records of foreign-to-
foreign communications provided by ████ pursuant to this Order

TOP SECRET//COMINT//NOFORN

10

TOP SECRET//COMINT//NOFORN

D.    The Director of the NSA shall continue to maintain

mandatory procedures to strictly control access to and use of

the BR metadata, in accordance with this Court's orders.  NSA's

OGC shall continue to promptly provide NSD with copies of these

mandatory procedures (and all replacements, supplements or

revisions thereto in effect now or adopted in the future).  The

Chief, Special FISA Oversight and Processing, Oversight and

Compliance, Signals Intelligence Directorate; Chief and Deputy

Chief, Homeland Security Analysis Center; and the Homeland

Mission Coordinators shall maintain appropriate management

controls (e.g., records of all tasking decisions, audit and

review procedures) for access to the metadata.

E.    The NSA shall obtain the BR metadata from ████

████████████████ via secure lines, and shall store and

process the BR metadata on a secure internal network that NSA

will not be used to make chain summary records. Further, such
records will be used solely for technical purposes, including
use by NSA's data integrity analysts to correctly interpret and
extract contact information in ████ international records.  In
the event that an NSA analyst performs an authorized query that
includes a search of the BR metadata, and the results of that
query include information from ████ foreign-to-foreign call
detail records, NSA shall handle and minimize the information in
those records in accordance with the minimization procedures in
this Order, regardless of the authority pursuant to which NSA
obtained the record.  In contrast, if the analyst's query does
not include a search of the BR metadata, and the results of that
query include information from ████ foreign-to-foreign call

TOP SECRET//COMINT//NOFORN

exclusively will operate.

F. Any processing by technical personnel of the BR metadata acquired pursuant to this order shall be conducted through the NSA's secure internal network, which shall be accessible only to authorized personnel, using accounts authorized by a user authentication service, based on user login and password.

G. Access to the metadata shall be controlled by user name and password. NSA's Oversight and Compliance Office shall monitor the designation of individuals with access to the BR metadata. When the BR metadata is accessed through queries under paragraphs (3)B or (3)C above, a software interface shall limit access to the BR metadata to authorized personnel, and the user's login, Internet Protocol (IP) address, date and time, and retrieval request shall be automatically logged for auditing capability.[8] When the BR metadata is accessed through any other means under paragraph (3)B above, the user's login, date and time shall be automatically logged for auditing capability.

---

detail records, then the minimization procedures in this Order shall not be applied to the information in those records.

[8] In addition, the Court understands from the Declaration of Lieutenant General Keith B. Alexander, Director of NSA (Ex. A to the Report of the United States filed in docket number BR 09-09 on August 17, 2009) that NSA has made a number of technical modifications that will prohibit analysts: a) from inadvertently accessing the BR metadata in ███████; b) from querying the BR metadata in ██████ with non-RAS-approved identifiers; and c)

TOP SECRET//COMINT//NOFORN

NSA's Office of Oversight and Compliance shall monitor the functioning of this automatic logging capability. All persons authorized for access to the BR metadata and other NSA personnel who are authorized to receive query results shall receive appropriate and adequate training concerning the authorization granted by this Order, the limited circumstances in which the BR metadata may be accessed, and/or other procedures and restrictions regarding the retrieval, storage, and dissemination of the metadata. NSA's OGC shall ensure that such training is provided.

H. NSA shall treat information from queries of the BR metadata in accordance with USSID 18 and shall apply USSID 18 to minimize and disseminate information concerning U.S. persons obtained from the records produced pursuant to the authorities granted herein. Additionally, before the NSA disseminates any U.S. person identifying information, the Chief of Information Sharing Services in the Signals Intelligence Directorate, the Senior Operations Officer at NSA's National Security Operations Center, the Signals Intelligence Directorate Director, the Deputy Director of the NSA, or the Director of the NSA must determine that the information identifying the U.S. person is in

---

from going beyond three "hops" from an identifier used to query the BR metadata in ▓▓▓▓▓

TOP SECRET//COMINT//NOFORN

fact related to counterterrorism information and that it is
necessary to understand the counterterrorism information or
assess its importance. Notwithstanding the above requirements,
NSA may share certain information, as appropriate, derived from
the BR metadata, including U.S. person identifying information,
with Executive Branch and Legislative Branch personnel in order
to enable them to fulfill their lawful oversight functions, and,
in the case of Executive Branch personnel, to enable them to
determine whether the information contains exculpatory or
impeachment information or is otherwise discoverable in legal
proceedings. By 5:00 p.m. each Friday following the
authorization requested herein, the government shall file a
report listing each instance during the seven-day period ending
the previous Friday in which NSA has shared, in any form,
information obtained or derived from the BR metadata with anyone
outside NSA. For each such instance, the government shall
specify the date on which the information was shared, the
recipient of the information, and the form in which the
information was communicated (e.g., written report, e-mail, oral
communication, etc.). For each such instance in which U.S.
person information has been shared, except those involving
Executive Branch personnel seeking to identify discoverable
information, the Chief of Information Sharing Services in the

TOP SECRET//COMINT//NOFORN

Signals Intelligence Directorate shall certify that one of the authorized officials identified above determined, prior to dissemination, that the information was related to counterterrorism information and necessary to understand the counterterrorism information or to assess its importance. This paragraph's reporting requirement is not intended to apply to instances in which BR metadata and information derived therefrom is shared with Executive Branch or Legislative Branch personnel in order to facilitate their lawful oversight functions.

I. Personnel authorized to query the BR metadata in paragraph (3)C above may use and share the results of authorized queries of the BR metadata among themselves and with NSA personnel, including those who are not authorized to access the BR metadata pursuant to paragraph (3)C, provided that all NSA personnel receiving such query results in any form (except for information properly disseminated outside NSA) shall first receive appropriate and adequate training and guidance regarding the rules and restrictions governing the use, storage, and dissemination of such information. NSA's Oversight and Compliance Office shall monitor the designation of individuals who have received the training and guidance necessary to receive the results of queries of the BR metadata.

TOP SECRET//COMINT//NOFORN

J.  Authorized personnel also may use and share the identity
of high-volume telephone identifiers and ███████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████ that they discover or have
discovered as a result of access authorized under paragraphs
(3)B and (3)C or as a result of technical personnel access under
prior docket numbers in this matter, among themselves and with
other NSA personnel, including those who are not authorized to
access the BR metadata, for purposes of metadata reduction and
management.  The training requirements set forth in paragraph
(3)I above for NSA personnel receiving query results shall not
apply to personnel receiving such identifiers, which may have
been identified through queries, so long as they are received
solely for purposes of metadata reduction and management.

K.  The BR metadata collected under this Court's Orders may
be kept online (that is, accessible for queries) for five years
from the date of acquisition, at which time it shall be
destroyed.

TOP SECRET//COMINT//NOFORN

L.  At least twice before the expiration of the authorities granted herein, NSA's OGC shall conduct a random spot check, consisting of an examination of a sample of call detail records obtained, to ensure that NSA is receiving only data as authorized by the Court and not receiving the substantive content of communications.

M.  At least twice before the expiration of the authorities granted herein, the Department of Justice's National Security Division (NSD) will review NSA's access to the BR metadata under paragraph (3)C above.  Such reviews shall include a sample of the justifications designated approving officials relied upon to approve telephone identifiers for querying the BR metadata, and a review of the queries conducted.

N.  NSA's OGC shall consult with NSD on all significant legal opinions that relate to the interpretation, scope, and/or implementation of the authorizations granted by the Court in this matter.  When operationally practicable, such consultation shall occur in advance; otherwise, NSD shall be notified as soon as practicable.

O.  NSA's OGC shall promptly provide NSD with copies of all formal briefing and/or training materials (including all revisions thereto) currently in use or prepared and used in the future to brief/train NSA personnel concerning the

TOP SECRET//COMINT//NOFORN

authorizations granted by this Order.

P.  At least once before the expiration of the authorities granted herein, a meeting for the purpose of assessing compliance with this Court's orders in this matter shall be held with representatives from NSA's OGC, NSD, and appropriate individuals from NSA's Signals Intelligence Directorate.  The results of this meeting shall be reduced to writing and submitted to the Court as part of any application to renew or reinstate the authorities granted herein.

Q.  At least once before the expiration of the authorities granted herein, NSD shall meet with NSA's Office of Inspector General (OIG) to discuss their respective oversight responsibilities and assess NSA's compliance with the Court's orders in this matter.

R.  Prior to implementation, all proposed automated query processes shall be reviewed and approved by NSA's OGC, NSD, and the Court.

S.  Within forty-five days of the issuance of this Order, NSA shall file a report with the Court describing the queries made since end of the reporting period of the last report filed pursuant to the Court's order in docket number BR 09-19. Additionally, any application to renew or reinstate the

TOP SECRET//COMINT//NOFORN

TOP SECRET//COMINT//NOFORN

authority granted herein shall include a report describing: (i) the queries made since the end of the reporting period of the last report filed with the Court; (ii) the manner in which NSA applied the procedures set forth in paragraph (3)C above; and (iii) any proposed changes in the way in which the call detail records would be received from the carriers and any significant changes to the systems NSA uses to receive, store, process, and disseminate BR metadata.

This authorization regarding ████████████████████ ██████████████████ and unknown persons in the United States and abroad affiliated with ██████████████████████ ████████████████████████████████ ████████████████ and unknown persons in the United States and abroad affiliated with ████████████████████████ ████████████████ expires on the 21st day of May, 2010, at 5:00 p.m., Eastern Time.

Signed _____ __3:36 PM___ Eastern Time.
         Date              Time

REGGIE B. WALTON
Judge, United States Foreign
Intelligence Surveillance Court

TOP SECRET//COMINT//NOFORN

Deputy Clerk
I certify that this document
is a true and correct copy of
the original.